UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

JAN 29 1998

MICHAEL N. MILBY, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CLARENCE LEE BRANDLEY, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-91-3574 |
| § | |
| MONTGOMERY COUNTY, § | |
| § | |
| Defendant. § | |

MEMORANDUM AND ORDER

Pending is Defendant Montgomery County's Motion to Dismiss Plaintiff's Third Amended Complaint or in the Alternative Motion for Summary Judgment (Document No. 184). After having considered the motion, the response, the parties' submissions, and the applicable law, the Court concludes, for the reasons set forth below, that Defendant Montgomery County's Motion to Dismiss Plaintiff's Third Amended Complaint is DENIED, and the Alternative Motion for Summary Judgment is GRANTED.

This case has a long history in this Court. Suffice it to say that with the filing of Plaintiff's Third Amended Complaint, Clarence Lee Brandley ("Brandley") is the only Plaintiff, and Montgomery County, Texas ("Montgomery County") is the only Defendant. In addition, the only claims which remain are Brandley's claims under 42 U.S.C. §§ 1981 and 1983 for malicious prosecution.[1]

---

[1] In its Memorandum and Order entered October 5, 1993, this Court denied Defendants' Joint Motion to Dismiss based on the statute of limitations insofar as it pertained to Plaintiffs' § 1983 claims for malicious prosecution. The Fifth Circuit Court of Appeals subsequently observed, citing Heck v. Humphrey, 512 U.S.

194

Montgomery County moves for dismissal of these remaining claims, or in the alternative for summary judgment. With respect to the dismissal argument, Montgomery County argues that Brandley has "failed to specifically and correctly identify any deprivation of a right secured by the United States Constitution and laws by which he could come under the terms of 42 U.S.C. § 1983." More specifically, Montgomery County argues that Brandley has failed to allege the existence of a policy adopted by a Montgomery County policymaker, and has failed to allege "sufficiently numerous prior incidents of a similar nature that would tend to prove custom, and consent to that custom by the county's policy makers." With respect to the summary judgment motion, Montgomery County argues that Brandley cannot show that it instituted a criminal prosecution against him in the absence of probable cause, an element which must be proven for a plaintiff to prevail on a malicious prosecution claim.

---

477, 489-90, 114 S. Ct. 2364, 2374 (1994), that the "underlying criminal proceeding must terminate in the plaintiff's favor before a malicious prosecution claim accrues." <u>Brandley v. Keeshan</u>, 64 F.3d 196, 199 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 947 (1996). The summary judgment evidence now under submission includes a copy of the Order of Dismissal signed on October 8, 1990, by the presiding judge of the 221st Judicial District Court of Montgomery County, Texas, in which the State's prosecution of Brandley was dismissed. The instant claims were timely filed within two years after termination of the criminal proceeding in Plaintiff's favor.

## Dismissal

FED. R. CIV. P. 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. <u>Scheuer v. Rhodes</u>, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. <u>Id.</u>

In considering a motion to dismiss under Rule 12(b)(6), the district court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint. <u>La Porte Construction Co. v. Bayshore Nat'l Bank of La Porte, Tex.</u>, 805 F.2d 1254, 1255 (5th Cir. 1986); <u>Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.</u>, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied* 103 S. Ct. 729 (1983); <u>Mann v. Adams Realty Co.</u>, 556 F.2d 288, 293 (5th Cir. 1977). Dismissal of a claim is improper unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. <u>Hughes v. Rowe</u>, 101 S. Ct. 173, 176 (1980); <u>Conley v. Gibson</u>, 78 S. Ct. 99, 102 (1957); <u>Kaiser Aluminum</u>, 677 F.2d at 1050; <u>Mann</u>, 556 F.2d at 293. "The plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement is sufficient if it gives the defendant fair notice of what the claim is and the

3

grounds upon which it rests." Mann, 556 F.2d at 293. Therefore, in challenging the sufficiency of the complaint under Rule 12(b)(6), the defendant bears the burden of proving that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint. Hishon v. King & Spalding, 104 S. Ct. 2229, 2232 (1984).

Montgomery County argues for dismissal of Brandley's § 1981 and § 1983 claims for malicious prosecution because Brandley has not alleged a violation of a federal constitutional right and because Brandley has not identified a policy or custom of malicious prosecution that would impose liability upon Montgomery County under Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978). In response to Montgomery County's argument for dismissal, Brandley contends that he was not required specifically to allege a violation of his constitutional rights; general allegations which would support such a violation will suffice. With respect to the "policy" requirement, Brandley maintains that Montgomery County may be held liable under Pembaur v. City of Cincinnati, 475 U.S. 469, 480-82 (1986) for the unconstitutional actions of its policymakers.

The Fifth Circuit recognizes a § 1983 claim for malicious prosecution that is premised on violations of the Fourth Amendment. Eugene v. Alief Independent School Dist., 65 F.3d 1299, 1303 (5th Cir. 1995), *cert. denied*, ___ U.S. ___, 116 S. Ct. 1680 (1996); Sanders v. English, 950 F.2d 1152, 1159 (5th Cir. 1992); Hand v. Gary, 838 F.2d 1420 (5th Cir. 1988); Sanders v. Fort Bend County, 932 F. Supp. 894, 897 (S.D. Tex. 1996); Cornett v. Longois, 871 F.

4

Supp. 918, 921 (E.D. Tex. 1994). While Brandley did not specifically plead in his Third Amended Complaint that his § 1983 claim for malicious prosecution is based on violations of his Fourth Amendment right to be free from criminal prosecution except upon probable cause, Brandley was under no obligation specifically to plead his claims. In <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 113 S. Ct. 1160, 1663 (1993), the United States Supreme Court held that with respect to claims of governmental liability under § 1983, a heightened pleading requirement cannot be squared with the notice pleading set forth in FED. R. CIV. P. 8. Moreover, the fact that Brandley did not specifically mention the Fourth Amendment does not subject his claim to dismissal, especially given the several allegations he makes in support of the malicious prosecution claim. *See e.g.*, <u>Patterson v. Armatys</u>, 808 F. Supp. 550, 551 (E.D. Tex. 1992) (holding that a plaintiff's failure to mention the Fourth Amendment in his complaint did not justify dismissal of the case). Finally, until the Supreme Court decided the case of <u>Albright v. Oliver</u>, 510 U.S. 266, 114 S. Ct. 807 (1994), there was a decided uncertainty among the circuits as to the proper constitutional basis for a malicious prosecution claim. In <u>Albright</u>, the Supreme Court held that a malicious prosecution claim under § 1983 could not be based on substantive due process rights arising under the Fourteenth Amendment. If a claim were to be maintained at all under § 1983 for malicious prosecution it had to be premised on violations of the Fourth Amendment. Because the allegations in Brandley's Third

5

Amended Complaint are broad enough to encompass a § 1983 malicious prosecution claim which is premised on violations of the Fourth Amendment, Brandley's § 1983 malicious prosecution claim is not subject to dismissal for failure to allege a specific constitutional violation.

With respect to Montgomery County's argument that Brandley has failed to allege a policy, the Court finds that Brandley's allegations, when taken together and read liberally, are adequate to state a claim for malicious prosecution against Montgomery County. Under § 1983, municipalities and other local governmental bodies are "persons" that may be sued directly where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978); *see also* Languirand v. Hayden, 717 F.2d 220, 223 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984). A municipality or other local governmental entity may also be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91; *see also* Languirand, 717 F.2d at 223. However, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, the plaintiff must show

6

that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights." Board of the County of Comm'rs of Bryan Co. v. Brown, ____ U.S. ____, 117 S.Ct. 1382, 1387 (1997); *see also* Piotrowski v. City of Houston, 51 F.3d 512, 517 (5th Cir. 1995); Burns v. City of Galveston, 905 F.2d 100, 102 (5th Cir. 1990).

There are two types of "policies" under which a municipality may be held liable. Pembaur v. City of Cincinnati, 475 U.S. 469, 480-82 (1986). One type of "policy" is characterized by formal rules and understandings which constitute fixed plans of actions to be followed under similar circumstances consistently and over time. Id. Another type of "policy" exists when a municipality takes a course of action tailored to a specific situation and not intended to control decisions in later situations. Id. at 481. Under this second type of "policy," a municipality can be liable only if the decision to adopt that particular course of action is properly made by that government's authorized decision makers. Id. Such "authorized decision makers" are defined as officials "whose acts or edicts may fairly be said to represent official policy" and whose decisions may therefore give rise to municipal liability under § 1983. Id. at 480 (quoting Monell, 436 U.S. at 694). The Fifth Circuit has held that, under Monell, when a final policy maker makes a decision, and that decision is within the sphere of the policy maker's final authority, "the existence of a well-established, officially-adopted policy will not insulate the

7

municipality from liability." <u>Bennett v. Pippin</u>, 74 F.3d 578, 586 (5th Cir.), *cert. denied*, 117 S. Ct. 68 (1996) (quoting <u>Gonzalez v. Ysleta Indep. Sch. Dist.</u>, 996 F.2d 745, 754 (5th Cir. 1993)). Taking Brandley's allegations in his Third Amended Complaint as true, the Court concludes that Brandley has stated a claim for malicious prosecution against Montgomery County under 42 U.S.C. §§ 1981 and 1983.

### Summary Judgment

As an alternative to dismissal of Brandley's §§ 1981 and 1983 claims, Montgomery County seeks summary judgment. According to Montgomery County, Brandley cannot come forth with any evidence in support of one of the elements of his malicious prosecution claim, that is, that there was an absence of probable cause to support the criminal prosecution. In response, Brandley points out that just because he was indicted upon a finding of probable cause, does not mean that Montgomery County, and its policymakers, did not fabricate and distort the evidence upon which the probable cause finding was based.

Rule 56(c) provides that "[summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary

8

judgment bears the initial burden of informing the district court of the basis for the motion, and identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which the moving party believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Id. at 2553-54. A party opposing a properly-supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing the existence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2514-15 (1986). Unsubstantiated assertions that a fact issue exists will not suffice. See Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1442 (5th Cir. 1993); Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992). The nonmovant "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." Krim, 989 F.2d at 1442.

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. Anderson, 106 S. Ct. at 2513-14. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,

9

475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, summary judgment is proper. Kelley v. Price Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 688 (1994), *citing* Matsushita, 106 S. Ct. at 1351. On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id., *citing* Anderson, 106 S. Ct. at 2511.

Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513. *Accord*, Veillon v. Exploration Services, Inc., 876 F.2d 1197, 1200 (5th Cir. 1989); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2728 (1983).

To prevail on a malicious prosecution claim under § 1983, a plaintiff must prove: (1) that a criminal prosecution was commenced against him; (2) that the prosecution was caused by the Defendant or with his aid; (3) that the action terminated in Plaintiff's favor; (4) that the Plaintiff was innocent; (5) that the Defendant acted without probable cause; (6) that the Defendant acted with malice; and (7) that the criminal proceedings damaged Plaintiff. Sanders v. Fort Bend County, Texas, 932 F. Supp. 894, 897 (S.D. Tex. 1996). In its Motion for Summary Judgment, Montgomery County challenges Brandley's ability to come forth with evidence or proof that there was an absence of probable cause to support the criminal prosecution instituted against him. To negate the probable cause

10

element of Brandley's claim, Montgomery County points to the probable cause evidence set forth in an affidavit made by a Conroe, Texas, police officer, the probable cause finding made by the magistrate who authorized the arrest warrant for Brandley, Texas Ranger Wesley Styles's investigative report, and the evidence upon which Brandley was tried and convicted. In response to the Motion for Summary Judgment, Brandley relies on the following findings of the state habeas court, which recommended to the Texas Court of Criminal Appeals that Brandley's capital murder conviction be vacated:

> The murder investigation was so contrived that it created false testimony and that the investigation failed to follow any leads which did not comport with the preconceived, premature notion that [Brandley] committed the murder. Styles admitted at the evidentiary hearing that before he arrived in Conroe and prior to interviewing any witnesses, [Brandley] was his only suspect.

Ex Parte Brandley, 781 S.W.2d 886, 890 (Tex. Crim. App. 1989) (en banc).

This finding, either by itself or when read in conjunction with the other findings of fact and conclusions of law entered in connection with Brandley's successful state application for writ of habeas corpus, does not raise a genuine issue of material fact that Montgomery County or its policymaker contrived an improper investigation or directed a malicious prosecution in violation of §§ 1981 and 1983. To begin with, the State District Attorney for Montgomery County (and other adjacent counties) is not an agent of the county nor a policymaker for the county. A district attorney,

11

"acting in the prosecutorial capacity to enforce a penal statute . . . is an agent of the state, not of the county in which the criminal case happens to be prosecuted." Esteves v. Brock, 106 F.3d 674, 678 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 91 (1997). Styles, who is mentioned in the above quoted finding, was a Texas Ranger and thus an agent of the State, not of Montgomery County; and it was he who directed the criminal investigation of Brandley. The above-quoted finding does not implicate in any way Montgomery County's policymaker in the criminal justice arena, namely, the sheriff.

The Fifth Circuit has recognized, however, that if a county sheriff abuses his authority as the ultimate repository of law enforcement power in his county, and acts as a co-conspirator with the district attorney maliciously to prosecute a person, then the conspiracy, if proven, will suffice to impose liability upon the county. Turner v. Upton County, Texas, 915 F.2d 133, 136 (5th Cir. 1990), *cert. denied*, 498 U.S. 1069, 111 S. Ct. 788 (1991). In Turner the Fifth Circuit reversed a summary judgment for the county, and explained the rationale of this limited basis for holding the county liable for a malicious prosecution as follows:

> It has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement, not by virtue of delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected[.]
>
> * * *
>
> As the county's final policymaker in this area, he has been empowered by the state to "define objectives and

12

>  choose the means of achieving them" without county supervision. *Rhode v. Denson*, 776 F.2d 107, 109 (5th Cir. 1985), *cert. denied*, 476 U.S. 1170, 106 S. Ct. 2891, 90 L.Ed.2d 978 (1986). These means include the investigation of crimes, the collection of evidence thereof, and the presentation of this evidence to the district attorney for purposes of determining the appropriateness of prosecution. In essence, Turner alleges that in her case the sheriff, in conspiracy with the district attorney, set an impermissible goal of subjecting her to trial on false charges and used the powers inherent in his position as chief county law enforcement officer to create the case presented at trial, secure perjured testimony, and attempt to coerce her to plead guilty.
>
>  If proven, therefore, the sheriff's participation as a coconspirator, constituting as it would an abuse of his authority as the ultimate repository of law enforcement power in Upton County, would render the county liable as well.

<u>Id.</u> at 136, 137 (emphasis in original).

In the instant case Brandley has presented no summary judgment evidence of a conspiracy between the Montgomery County Sheriff and the State District Attorney that would raise a genuine issue of material fact on the sheriff's abuse of his authority as the ultimate repository of law enforcement power in Montgomery County, Texas. Quite to the contrary, all of the evidence is that the criminal investigation, and all of the improprieties and wrongful conduct associated therewith, were conducted by Texas Ranger Styles and other State investigating authorities in conjunction with the State District Attorney. There is no summary judgment evidence that the Montgomery County Sheriff did anything in concert with the State District Attorney, or any other State or county actor, to conspire to prosecute Brandley without probable cause. In fact, in this Court's Memorandum and Order entered October 5, 1993, the

Court found that Plaintiffs had failed to state a § 1983 claim against Montgomery County Sheriff Joseph Corley because no allegations of his personal involvement had been pled, and the Court dismissed the case against him. That ruling was upheld on appeal. Brandley v. Keeshan, 64 F.3d 196 (5th Cir. 1995).[2]

Although Brandley has failed to submit any evidence of a conspiracy which would satisfy the circumstances under which the County may be held liable pursuant to Turner, the Court has made a careful review of the summary judgment evidence and of the lengthy findings of fact and conclusions of law which were made in connection with Brandley's state application for writ of habeas corpus. That evidence does not reveal any hint of a conspiracy between the Montgomery County Sheriff and the District Attorney. In Ex Parte Brandley, 781 S.W.2d 886 (Tex. Crim. App. 1989), the Texas Court of Criminal Appeals specifically found that Wesley Styles, a Texas Ranger, headed the murder investigation which led to the arrest and prosecution of Brandley. The Texas Court of Criminal Appeals in Ex Parte Brandley did not once mention the Montgomery County Sheriff or suggest that the Sheriff was in any way involved in the investigation or prosecution of Brandley. Rather, the Texas Court of Criminal Appeals found that Styles did

---

[2] The State's investigation and prosecution of Brandley evidently overlapped the terms of two sheriffs, Sheriff Corley and Sheriff Reaves. The Court in the instant motion has also found a reference to Sheriff Reaves in connection with his initial rejection of a bail bond, discussed below at page 16, but that too, as will be seen, does not raise a fact issue on Montgomery County having been the "moving force" for the malicious prosecution of Brandley.

14

an incomplete investigation, had preconceived notions about Brandley's guilt which influenced the thoroughness of his investigation, failed to investigate material leads, and threatened and intimidated witnesses into falsely implicating Brandley in the murder. Because Styles was a Texas Ranger, admittedly a State actor, his misconduct cannot be attributed to the County.[3]

The misconduct of the State District Attorney for Montgomery County also cannot be attributed to the County. In Ex Parte Brandley, the Texas Court of Criminal Appeals found that the "State" pursued the prosecution of Brandley through the District Attorney by suppressing evidence, failing to collect all relevant evidence (including blood, hair and fluid samples), and refusing properly to test the evidence that was collected. As was made clear in this Court's earlier Order, however, the District Attorney who prosecuted Brandley had absolute prosecutorial immunity. Accordingly, his misconduct, in the absence of evidence that he conspired with a county official who had final policymaking authority, cannot be used to impose liability on the County. See e.g., Krueger, 66 F.3d at 76-77 (liability of a county could not be premised on a conspiracy between district attorney and county judge, both of whom had immunity).

---

[3] Moreover, it is noted that the Court denied Styles's Motion to Dismiss Plaintiffs' § 1983 claims, finding that Plaintiffs had pled sufficient facts to overcome Styles's qualified immunity defense. See Document No. 89 at p.20-24. Thereafter, Plaintiffs' voluntarily dismissed their claims against Styles. See Document No. 160. For that additional reason, Plaintiffs cannot use Styles's misconduct as a basis for holding Montgomery County liable.

15

The lengthy findings of fact and conclusions of law entered by the State trial court after Brandley's evidentiary hearing on his State application for writ of habeas corpus are no more helpful to Brandley's claims against the County than the Texas Court of Criminal Appeals' opinion in Ex Parte Brandley. In the forty-seven pages of findings of fact and conclusions of law, the Montgomery County Sheriff is mentioned only three times. Two of these times evidently refer to the same event, namely, Sheriff Reaves's wrongful refusal at first to accept Brandley's posting of a $30,000 bail bond, which the court then ordered him to accept. The other mention is of the Sheriff's Department's discriminating against black spectators during Brandley's trial by following and observing them unduly, and differently from white spectators, when the black spectators would enter and exit the courtroom. Racial epithets are also attributed to the Sheriff and District Attorney that evidence an abhorrent racial animus. There is no finding or other suggestion in all 47 pages, however, that the Sheriff had any active participation in the investigation of the crime, the framing of Brandley with false evidence, or in directing a malicious prosecution against Brandley. Evidence of the Sheriff's racial animus and the overbearing and offensive conduct of his deputies while acting as bailiffs during the trial constitute no evidence that the Montgomery County Sheriff acted in a conspiracy with the State District Attorney maliciously to prosecute Brandley without probable cause. There is no mention in the forty-seven pages of findings of fact and conclusions of law that the Sheriff

16

participated either in the investigation or in the prosecution of Brandley. Moreover, there is not even summary judgment evidence identifying *who* the Sheriff was at the time of the prosecution, Sheriff Reaves or Sheriff Corley. In sum, there is no summary judgment evidence that creates a genuine issue of material fact on the malicious prosecution claims against the County, or to show that Montgomery County was the "moving force" behind the prosecution. Because there is no evidence that the misconduct surrounding the investigation and alleged malicious prosecution of Brandley was the implementation of a policy or custom adopted by Montgomery County or by the Sheriff of Montgomery County, as the County's final policymaker in law enforcement, in conspiracy with the State District Attorney, the County is entitled to summary judgment on Plaintiffs' malicious prosecution claims under § 1981 and § 1983.

## Order

Based on the foregoing, it is

ORDERED that Defendant Montgomery County's Motion to Dismiss Plaintiff's Third Amended Complaint (Document No. 184-1) is DENIED. It is further

ORDERED that Defendant Montgomery County's Alternative Motion for Summary Judgment (Document No. 184-2) is GRANTED.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 28th day of January, 1998.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

ClibPDF - www.fastio.com